UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| THE STATE OF OKLAHOMA, | ) | |
| THE COMMONWEALTH OF PENNSYLVANIA, | ) | |
| DEPARTMENT OF | ) | |
| ENVIRONMENTAL PROTECTION, | ) | |
| AND THE STATE OF WEST VIRGINIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:18-cv-2526 |
| | ) | |
| MPLX LP, | ) | |
| MARKWEST LIBERTY MIDSTREAM & | ) | |
| RESOURCES, L.L.C., | ) | |
| MARKWEST LIBERTY BLUESTONE, L.L.C. | ) | |
| MARKWEST HYDROCARBON, L.L.C, | ) | |
| MARKWEST OHIO FRACTIONATION | ) | |
| COMPANY, L.L.C., | ) | |
| MARKWEST UTICA EMG, L.L.C, | ) | |
| OHIO CONDENSATE COMPANY, L.L.C., | ) | |
| MARKWEST OKLAHOMA GAS | ) | |
| COMPANY, L.L.C., | ) | |
| MARKWEST BUFFALO CREEK GAS | ) | |
| COMPANY, L.L.C., | ) | |
| MARKWEST JAVELINA COMPANY, L.L.C., | ) | |
| MARKWEST ENERGY EAST TEXAS GAS | ) | |
| COMPANY, L.L.C., AND | ) | |
| MARKWEST ENERGY WEST TEXAS GAS | ) | |
| COMPANY, L.L.C., | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, the United States of America, by and through the Attorney General of the

United States, acting at the request and on behalf of the Administrator of the United States

Environmental Protection Agency ("EPA"), the Commonwealth of Pennsylvania, Department of

Environmental Protection ("PADEP"), the State of West Virginia, on behalf of the West Virginia

Department of Environmental Protection, and the Oklahoma Department of Environmental

Quality, an official agency of the State of Oklahoma to which the Oklahoma Legislature has

delegated the power and duty to enforce the Oklahoma Statutes ("State Co-Plaintiffs"), file this

complaint and allege as follows:

## NATURE OF ACTION

1.     This is a civil action brought against MPLX LP, MarkWest Liberty Midstream &

Resources, L.L.C., MarkWest Liberty Bluestone, L.L.C., MarkWest Hydrocarbon, L.L.C.,

MarkWest Ohio Fractionation Company, L.L.C., MarkWest Utica EMG, L.L.C., Ohio

Condensate Company, L.L.C., MarkWest Oklahoma Gas Company, L.L.C., MarkWest Buffalo

Creek Gas Company, L.L.C., MarkWest Javelina Company, L.L.C., MarkWest East Texas Gas

Company, L.L.C., and MarkWest Energy Texas Gas Company, L.L.C. ("Defendants") pursuant

to Section 113(b) of the Clean Air Act (the "CAA"), as amended 42 U.S.C. § 7413(b), and

applicable state laws and regulations to obtain civil penalties and injunctive relief for violations

of Section 111(e) of the CAA, 42 U.S.C. § 7411(e), and state law.

2.     Defendants own and operate natural gas processing plants located in Washington

County, Pennsylvania (Houston Facility); Evans City, Pennsylvania (Bluestone and Sarsen

Facilities); Dallas, West Virginia (Majorsville Facility); Smithfield, West Virginia (Mobley

Facility); West Union, West Virginia (Sherwood Facility); Clendenin, West Virginia (Cobb

Facility); Kenova, West Virginia (Kenova Facility); South Shore, Kentucky (Siloam Facility);

Langley, Kentucky (Langley Facility); Pikeville, Kentucky (Boldman Facility); Jewett, Ohio

(Hopedale Facility); Cadiz, Ohio (Cadiz Facility); Summerfield, Ohio (Seneca Facility); Utica,

Ohio (Utica Condensate Facility); Butler, Oklahoma (Arapaho Facility); Sayre, Oklahoma (Buffalo Creek Facility); Corpus Christi, Texas (Javelina Facility); Carthage, Texas (Carthage Facility and Carthage East Facility); and Orla, Texas (Hidalgo Facility) (collectively "Covered Facilities").  Defendant MPLX LP is headquartered in Findlay, Ohio.

3.     Defendants collectively have 8 large heaters at gas processing plants located at the Cadiz Facility (1), the Hopedale Facility (2), the Houston Facility (3), the Majorsville Facility (1) and the Sherwood Facility (1), and 28 small heaters at gas processing plants located at the Cadiz Facility (3), the Utica Condensate Facility (2), the Hopedale Facility (2), the Seneca Facility (4), the Buffalo Creek Facility (1), the Bluestone Facility (5), the Carthage Facility (1), the Mobley Facility (4), the Majorsville Facility (5), and the Sherwood Facility (1).

4.     Plaintiff and PADEP allege that MPLX LP and MarkWest Liberty Midstream & Resources, L.L.C. violated and/or continues to violate at the gas processing plant at its Houston Facility the New Source Performance Standard ("NSPS") regulations promulgated pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, and found at NSPS General Provisions under 40 C.F.R. Part 60, Subpart A ("Subpart A"); 40 C.F.R. Part 60, Subpart KKK (Standards of Performance for Equipment Leaks of Volatile Organic Compounds From Onshore Natural Gas Processing Plants for which Construction, Reconstruction, or Modification commenced after January 20, 1984, and on or before August 23, 2011) ("Subpart KKK"); 40 C.F.R. Part 60 Subpart VV (Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for which Construction, Reconstruction, or Modification Commenced After January 5, 1981, and on or Before November 7, 2006) ("Subpart VV"); and 40 C.F.R. Part 60, Subpart OOOO (Standards of Performance for Crude Oil and Natural Gas Production, Transmission and Distribution) ("Subpart OOOO"); and 40 C.F.R. Part 60, Subpart

VVa (Standards of Performance for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry for Which Construction, Reconstruction, or Modification Commenced After November 7, 2006);

5.     Plaintiff alleges that MPLX LP and MarkWest Fractionation Company, L.L.C. violated and/or continue to violate at the gas processing plant at their Hopedale Facility 40 C.F.R. Part 60, Subparts A, OOOO, VVa, NNN, and Kb; Condition C.2.b.2.a of the October 14, 2014 Permit to Install and Operate No. P0116897; and Ohio Administrative Code 3745-31;

6.     Plaintiff alleges that MPLX LP and MarkWest Utica EMG, L.L.C. violated and/or continue to violate at their Seneca Facility 40 C.F.R. Part 60, Subparts A, OOOO, and VVa;

7.     Plaintiff alleges that Defendants have violated and/or continue to violate 40 C.F.R. Part 60, Subparts A, OOOO, VVa, NNN, Kb, KKK and/or Subpart VV at the gas processing plants at the Covered Facilities.

8.     State Co-Plaintiff PADEP alleges on information and belief that MPLX LP and MarkWest Liberty Midstream & Resources L.L.C. violated and/or continue to violate 40 C.F.R. Part 60, Subparts A, VV, VVa, KKK, NNN, and OOOO at their Houston Facility; and that MPLX LP and MarkWest Liberty Bluestone L.L.C. violated and/or continue to violate 40 C.F.R. Part 60, Subparts A, Kb, VVa, NNN, and OOOO at their Bluestone Facility.

9.     State Co-Plaintiff West Virginia alleges on information and belief that MPLX LP and MarkWest Liberty Midstream & Resources L.L.C. violated and/or continue to violate 40 C.F.R. Part 60, Subparts A, VV, VVa, KKK, and OOOO at their Majorsville Facility; that MPLX LP and MarkWest Liberty Midstream & Resources L.L.C. violated and/or continue to violate 40 C.F.R. Part 60, Subparts A, VVa, and OOOO at their Mobley Facility; that MPLX LP and MarkWest Liberty Midstream & Resources L.L.C. violated and/or continue to violate 40

C.F.R. Part 60, Subparts A, VVa, and OOOO at their Sherwood Facility; that MPLX LP and

MarkWest Hydrocarbon L.L.C. violated and/or continue to violate 40 C.F.R. Part 60, Subparts

A, VV, VVa, KKK, and OOOO at their Cobb Facility; and MPLX LP and MarkWest

Hydrocarbon L.L.C. violated and/or continue to violate 40 C.F.R. Part 60, Subparts A, VV, VVa,

KKK, and OOOO at their Kenova Facility.

10.     State Co-Plaintiff Oklahoma alleges on information and belief that MPLX LP and

MarkWest Oklahoma Gas Company, L.L.C. violated and/or continue to violate 40 C.F.R. Part

60, Subparts A, VV, VVa, KKK, and OOOO at their Arapaho Facility; and that MPLX LP and

MarkWest Hydrocarbon L.L.C. violated and/or continue to violate 40 C.F.R. Part 60, Subparts

A, VVa, and OOOO at their Buffalo Creek Facility.

11.     Plaintiff alleges that certain Defendants have violated and/or continue to violate

Subpart Db (Standards of Performance for Industrial-Commercial-Institutional Steam Generating

Units) ("Subpart Db") at 8 heaters (Cadiz H-1782; Hopedale H-1741, and Hot Oil #4; Houston 3

Hot Oil and Frac Hot Oil-H-781; De-Ethanizer Hot Oil H-1741; Majorsville De-Ethanizer Hot

Oil (H-1782); Sherwood De-Ethanizer Hot Oil) at the gas processing plants at 8 Covered

Facilities.

12.     Plaintiff  alleges that certain Defendants have violated and/or continue to violate

Subpart Dc (Standards of Performance for Small Industrial-Commercial-Institutional Steam

Generating Units) ("Subpart Dc") at 28 heaters (Heaters Cadiz B002, B008, and B013; Cadiz

Condensate B001 and B002; Hopedale B001 and B002; Seneca B004, B005, B006, B009, and

B011; Buffalo Creek H-1; Bluestone Source 107-4, Source 107-5, Source 107-8, Source 107-12,

and Source 107-13; Carthage H8; Mobley H-1781, H-2781, H-4781, and H-5781; Majorsville H-

781, H-3781, H-4781, H-4782, and H6782; and Sherwood H771) at the gas processing plants at 10 Covered Facilities.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and under Section 113(b) of the CAA, 42 U.S.C. § 7413(b). Authority to bring this suit is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519 and Section 305 of the CAA, 42 U.S.C. § 7605, and in State Co-Plaintiffs by Section 304 of the CAA, 42 U.S.C. § 7604, Section 4 of the Pennsylvania Air Pollution Control Act, 35 P.S. § 4004, 27A OKLA. STAT. § 2-3-101(B)(2)), and West Virginia Code §§ 22-5-6 and 22-5-7.

14.     Venue is proper in this district pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c), and 1395(a) because Defendant MPLX LP is located in this district.

## NOTICE

15.     The United States has provided notice of the commencement of this action to the Commonwealths of Pennsylvania and Kentucky, and the States of Oklahoma, West Virginia, Texas and Ohio pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## AUTHORITY

16.     The United States has authority to bring this action on behalf of the Administrator of EPA under 28 U.S.C. §§ 516, 519 and Section 305 of the CAA, 42 U.S.C. § 7605.

17.     PADEP is the agency in the Commonwealth of Pennsylvania charged with the implementation and enforcement of the Air Pollution Control Act, 35 P.S. § 4001 *et seq.*

18.     The West Virginia Department of Environmental Protection is the agency of the

State of West Virginia charged with the implementation and enforcement of the West Virginia

Air Pollution Control Act, W.Va. Code 22-5-1, et seq. West Virginia has joined in this matter

alleging violations of the West Virginia Air Pollution Control Act and the legislative rules

promulgated pursuant to that Act at West Virginia Code of State Rules 45-16-1 et seq., which

implement the standards of performance for new stationary sources set forth in 40 C.F.R. Part

60.

19.     The Oklahoma Department of Environmental Quality, an official agency of the

State of Oklahoma to which the Oklahoma Legislature has delegated the power and duty to

enforce the Oklahoma Statutes, including the authority to bring actions in courts of competent

jurisdiction for violations of the Oklahoma Statutes, Oklahoma's SIP, and/or other state rules and

regulations incorporating and implementing Clean Air Act requirements (see 27A OKLA.

STAT. § 2-3-101(B)(2)), has joined in this matter alleging violations of its applicable SIP

provisions and/or other laws, rules, regulations, and permits incorporating and implementing

CAA requirements.

## **DEFENDANTS**

15.     Each Defendant is incorporated and registered to do business in the State in

which it owns and operates a Covered Facility.  Each Defendant identified in Paragraph 1, above,

owns and operates the Facility listed in the corresponding Paragraph 2.  Each Facility listed in

Paragraphs 2-3, above, is an onshore natural gas processing plant that removes natural gas

liquids from field gas and fractionates the natural gas liquids.  Certain Defendants identified in

Paragraph 1, above, own and operate a steam generating unit that commenced construction,

modification, or reconstruction after June 19, 1984, and that has a heat input capacity from fuels

combusted in the steam generating unit of greater than 29 megawatts (MW) (100 million British thermal units per hour (MMBtu/hr) as listed in Paragraph 3. Certain Defendants identified in Paragraph 1, above, own and operate a steam generating unit for which construction, modification, or reconstruction commenced after June 9, 1989 and that has a maximum design heat input capacity of 29 MW (100 MMBtu/hr) or less, but greater than or equal to 2.9 MW (10 MMBtu/hr) as listed in Paragraph 3.

20.     Each Defendant is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

21.      The Clean Air Act establishes a regulatory scheme designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population.  42 U.S.C. § 7401(b)(1).

## I.     New Source Performance Standards

### A.     General Provisions

22.     Section 111 of the CAA, 42 U.S.C. § 7411, authorizes EPA to promulgate regulations establishing New Source Performance Standards ("NSPS").

23.     Section 111(e) of the CAA, 42 U.S.C. § 7411(e), states that after the effective date of standards of performance promulgated under Section 111, it shall be unlawful for any owner or operator of any new source to operate such source in violation of any standard of performance applicable to such source.

24.     The term "standard of performance" is defined as a standard for emissions of air pollutants which reflects the degree of emission limitation achievable through the application of the best system of emission reduction which (taking into account the cost of achieving such

reduction and any non-air quality health and environmental impact and energy requirements) the Administrator determines has been adequately demonstrated. 42 U.S.C. § 7411(a)(1).

25.    The term "new source" is defined as any stationary source, the construction or modification of which is commenced after the publication of regulations (or, if earlier, proposed regulations) prescribing a standard of performance under this section that will be applicable to such source.  42 U.S.C. § 7411(a)(2).

26.    The term "stationary source" is defined as any building, structure, facility, or installation that emits or may emit any air pollutant. 42 U.S.C. § 7411(a)(3).

27.    The term "modification" means any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emissions of any air pollutant not previously emitted. 42 U.S.C. § 7411(a)(4).

28.    The term "owner or operator" is defined as any person who owns, leases, operates, controls, or supervises a stationary source. 42 U.S.C. § 7411(a)(5).

**B.     NSPS Subpart OOOO**

29.    On August 16, 2012, EPA promulgated NSPS Subpart OOOO.  77 Fed. Reg. 49,542.  Subpart OOOO was subsequently amended on September 23, 2013 (78 Fed. Reg. 58,435) and June 3, 2016 (81 Fed. Reg. 35,896).

30.    NSPS Subpart OOOO incorporates by reference certain provisions of the NSPS Standards for Equipment Leaks of VOC in the Synthetic Organic Chemicals Manufacturing Industry at 40 C.F.R. Part 60, Subpart VVa.

31.    Subpart OOOO at 40 C.F.R. § 60.5365 states that an owner or operator of one or more of the onshore affected facilities listed in paragraphs (a) through (g) of this section for

which construction, modification, or reconstruction commenced after August 23, 2011, is subject to the applicable provisions of Subpart OOOO.

32.     Section 60.5365(f) states that the group of all equipment, except compressors, within a process unit is an affected facility.

33.     Section 60.5365(f)(3) provides that the equipment within a process unit of an affected facility located at onshore natural gas processing plants and described in paragraph (f) of this section are exempt from Subpart OOOO if they are subject to and controlled according to Subparts VVa, GGG, or GGGa of 40 C.F.R. Part 60.

34.     Subpart OOOO at 40 C.F.R. § 60.5430 defines "process unit" to mean "components assembled for the extraction of natural gas liquids from field gas, the fractionation of the liquids into natural gas products, or other operations associated with the processing of natural gas products."

35.     Subpart OOOO at 40 C.F.R. § 60.5430 defines a "natural gas processing plant (gas plant)" as "any processing site engaged in the extraction of natural gas liquids from field gas, fractionation of mixed natural gas liquids to natural gas products, or both."

36.     Subpart OOOO at 40 C.F.R. § 60.5400 sets forth equipment standards that apply to affected facilities at an onshore natural gas processing plant.  This section applies to the group of all equipment, except compressors, within a process unit.

37.     Subpart OOOO at 40 C.F.R. § 60.5400(a) states that a subject owner or operator must comply with the equipment leak standard requirements of specific portions of Subpart VVa at 40 C.F.R. §§ 60.482-l a(a), (b), and (d), 60.482-2a, and 60.482-4a through 60.482-1 l a., except as provided in § 60.5401.

38.     Subpart OOOO at 40 C.F.R. § 60.5400(d) states that a subject owner or operator must comply with the provisions of 40 C.F.R. § 60.485a of Subpart VVa except as provided in § 60.5400(f).

39.     Subpart OOOO at 40 C.F.R. § 60.5400(e) states that a subject owner or operator must comply with the provisions of §§ 60.486a and 60.487a of Subpart VVa except as provided in §§ 60.5401, 60.5421, and 60.5422 of Subpart OOOO.

40.     Subpart OOOO at 40 C.F.R. § 60.5400(f) states that a subject owner or operator must use the following provision instead of 40 C.F.R. § 60.485a(d)(1): "Each piece of equipment is presumed to be in VOC service or in wet gas service unless an owner or operator demonstrates that the piece of equipment is not in VOC service or in wet gas service."

41.     Subpart OOOO at 40 C.F.R. § 60.5401(b)(1) states that each pressure relief device in gas/vapor service may be monitored quarterly and within 5 days after each pressure release to detect leaks by the methods specified in 40 C.F.R. § 60.485a(b) except as provided in 40 C.F.R. § 60.5400(c) and in paragraph (b)(4) of this section, and 40 C.F.R. § 60.482-4a(a) through (c) of subpart VVa.

42.     Subpart OOOO at 40 C.F.R. § 60.5401 (b)(2) provides that if an instrument reading of 500 ppm or greater is measured, a leak is detected.

43.     Subpart OOOO at 40 C.F.R. § 60.5401 (b)(3)(i) provides that when a leak is detected, it must be repaired as soon as practicable, but not later than 15 days after it is detected, except as provided in § 60.482-9a.

44.     Subpart OOOO at 40 C.F.R. § 60.5401 (b)(3)(ii) provides that a first attempt at repair must be made no later than 5 calendar days after each leak is detected.

45.     Subpart OOOO at 40 C.F.R. § 60.5401(b)(4)(i) provides that any pressure relief device that is located in a nonfractionating plant that is monitored only by non-plant personnel may be monitored after a pressure release the next time the monitoring personnel are on-site, instead of within 5 days as specified in paragraph (b)(1) of this section and § 60.482-4a(b)(1) of Subpart VVa.

46.     Subpart OOOO at 40 C.F.R. § 60.5401(b)(4)(ii) provides that no pressure relief device described in paragraph (b)(4)(i) of this section may be allowed to operate for more than 30 days after a pressure release without monitoring.

     **C.**     **NSPS Subpart VVa**

47.     On November 16, 2007, EPA promulgated NSPS Subpart VVa.  72 Fed. Reg. 64,883.

48.     Subpart VVa at 40 C.F.R. § 60.482-1a(a) states that "[e]ach owner or operator subject to the provisions of this subpart shall demonstrate compliance with the requirements of §§ 60.482-la through 60.482-10a or § 60.480a(e) for all equipment within 180 days of initial startup."

49.     Subpart VVa at 40 C.F.R. § 60.482-1a(b) states that "[c]ompliance with §§ 60.482-la to 60.482- l0a will be determined by review of records and reports, review of performance test results, and inspection using the methods and procedures specified in § 60.485a."

50.     Subpart VVa at 40 C.F.R. § 60.482-2a(a)(l) states that "[e]ach pump in light liquid service shall be monitored monthly to detect leaks by the methods specified in § 60.485a(b), except as provided in § 60.482-la(c) and (f) and paragraphs (d), (e), and (f) of this section.  A pump that begins operation in light liquid service after the initial startup date for the

process unit must be monitored for the first time within 30 days after the end of its startup period."

51.     Subpart VVa at 40 C.F.R. § 60.482-2a(a)(2) states that "[e]ach pump in light liquid service shall be checked by visual inspection each calendar week for indications of liquids dripping from the pump seal, except as provided in § 60.482-la(f)."

52.     Subpart VVa at 40 C.F.R. § 60.482-11a(a) states that "[t]he owner or operator shall initially monitor all connectors in the process unit for leaks by the later of either 12 months after the compliance date or 12 months after initial startup."

53.     Subpart VVa at 40 C.F.R. § 60.482-11a(d) states that "[w]hen a leak is detected pursuant to paragraphs (a) and (b) of this section, it shall be repaired as soon as practicable, but not later than 15 calendar days after it is detected, except as provided in § 60.482-9a.  A first attempt at repair as defined in this subpart shall be made no later than 5 calendar days after the leak is detected" from a connector.

54.     Subpart VVa at 40 C.F.R. § 60.482-7a(d)(2) states that "[a] first attempt at repair shall be made no later than 5 calendar days after each leak is detected" from a valve.

55.     Subpart VVa at 40 C.F.R. § 60.482-6a(a)(l) states that "[e]ach open-ended valve or line shall be equipped with a cap, blind flange, plug, or a second valve, except as provided in § 60.482-la(c) and paragraphs (d) and (e) of this section."

56.     Subpart VVa at 40 C.F.R. § 60.482-6a(a)(2) states that "[t]he cap, blind flange, plug, or second valve shall seal the open end at all times except during operations requiring process fluid flow through the open-ended valve or line."

57.     Subpart VVa at 40 C.F.R. § 60.482-7a(a)(1) states that "[e]ach valve shall be monitored monthly to detect leaks by the methods specified in § 60.485a(b) and shall comply with paragraphs (b) through (e) of this section."

58.     Subpart VVa at 40 C.F.R. § 60.482-7a(a)(2) states that "[a] valve that begins operation in gas/vapor service or light liquid service after the initial startup date for the process unit must be monitored according to paragraphs (a)(2)(i) or (ii)."

59.     Subpart VVa at 40 C.F.R. § 60.482-7a(a)(2)(i) states that a facility must "[m]onitor the valve as in paragraph (a)(l) of this section. The valve must be monitored for the first time within 30 days after the end of its startup period to ensure proper installation."

60.     Subpart VVa at 40 C.F.R. § 60.485a(b) states that "[t]he owner or operator shall determine compliance with the standards in §§ 60.482-la through 60.482-11a, 60.483a, and 60.484a as follows: (1) Method 21 shall be used to determine the presence of leaking sources. The instrument shall be calibrated before use each day of its use by the procedures specified in Method 21 of Appendix A-7 of this part."

61.     Subpart VVa at 40 C.F.R. § 60.482-4a(a) states that "[e]xcept during pressure releases, each pressure relief device in gas/vapor service shall be operated with no detectable emissions, as indicated by an instrument reading of less than 500 ppm above background, as determined by the methods specified in § 60.485a(c)."

62.     Subpart VVa at 40 C.F.R. § 60.482-4a(b)(1) states that "[a]fter each pressure release, the pressure relief device shall be returned to a condition of no detectable emissions, as indicated by an instrument reading of less than 500 ppm above background, as soon as practicable, but no later than 5 calendar days after the pressure release, except as provided in § 60.482-9a."

63.     Subpart VVa at 40 C.F.R. § 60.482-4a(b)(2) provides that "[n]o later than 5 calendar days after the pressure release, the pressure relief device shall be monitored to confirm the conditions of no detectable emissions, as indicated by an instrument reading of less than 500 ppm above background, by the methods specified in § 60.485a(c)."

64.     Subpart VVa at 40 C.F.R. § 60.482-4a(c) provides that "[a]ny pressure relief device that is routed to a process or fuel gas system or equipped with a closed vent system capable of capturing and transporting leakage through the pressure relief device to a control device as described in 40 C.F.R. § 60.482-10a is exempted from the requirements of paragraphs (a) and (b) of [§ 60.482-4a]."

**D.      NSPS Subpart KKK**

65.     On June 24, 1985, EPA promulgated NSPS Subpart KKK.  50 Fed. Reg. 26,124.

66.     Subpart KKK at 40 C.F.R. § 60.630(a)(1) states that the provisions of this subpart apply to affected facilities in onshore natural gas processing plants.

67.     Subpart KKK at 40 C.F.R. § 60.630(a)(3) states that the group of all equipment except compressors within a process unit is an affected facility.

68.     Subpart KKK at 40 C.F.R. § 60.630(b) states that any affected facility under paragraph (a) of this section that commences construction, reconstruction, or modification after January 20, 1984, and on or before August 23, 2011, is subject to the requirements of this subpart.

69.     Subpart KKK at 40 C.F.R. § 60.631 defines "equipment" as "each pump, pressure relief device, open-ended valve or line, valve, compressor, and flange or other connector that is in VOC service, and any device or system required by this subpart."

70.     Subpart KKK at 40 C.F.R. § 60.631 defines "field gas" as "feedstock gas entering the natural gas processing plant."

71.     Subpart KKK at 40 C.F.R. §60.631 defines "in light liquid service" to mean "the piece of equipment [that] contains a liquid that meets the conditions specified in § 60.485(e) or § 60.633(h)(2)."

72.     Subpart KKK at 40 C.F.R. § 60.631 defines "natural gas liquids" as "the hydrocarbons, such as ethane, propane, butane, and pentane, that are extracted from field gas."

73.     Subpart KKK at 40 C.F.R. § 60.631 defines "natural gas processing plant (gas plant)" as "any processing site engaged in the extraction of natural gas liquids from field gas, fractionation of mixed natural gas liquids to natural gas products, or both."

74.     Subpart KKK at 40 C.F.R. § 60.63 1 defines "onshore" as "all facilities except those that are located in the territorial seas or on the outer continental shelf."

75.     Subpart KKK at 40 C.F.R. § 60.631 defines "process unit" as "equipment assembled for the extraction of natural gas liquids from field gas, the fractionation of the liquids into natural gas products, or other operations associated with the processing of natural gas products.  A process unit can operate independently if supplied with sufficient feed or raw materials and sufficient storage facilities for the products."

76.     Subpart KKK at 40 C.F.R. § 60.632 states that each owner or operator subject to the provisions of this subpart shall comply with the requirements of §§ 60.482- l(a), (b), and (d) and 60.482-2 through 60.482-10, except as provided in § 60.633, as soon as practicable, but no later than 180 days after initial startup.

77.     Subpart KKK at 40 C.F.R. § 60.632(a), (d), and (e), specifies the provisions of Subpart VV that apply to owners and operators of affected facilities under Subpart KKK and requires compliance with those Subpart VV provisions no later than 180 days after initial startup.

**E.     NSPS Subpart VV**

78.     On October 18, 1983, EPA promulgated NSPS Subpart VV.  48 Fed. Reg. 1983.

79.     Subpart VV applies to affected facilities in the synthetic organic chemicals manufacturing industry. 40 C.F.R. § 60.480(a)(1).

80.     Subpart VV at 40 C.F.R. § 60.482-1(a), (b) and (d), §§ 60.482-2 through 60.482-10, and §§ 60.485, 60.486 and 60.487, except as provided in §§ 60.633(f), 60.634, 60.635 and 60.636, apply to affected facilities in onshore natural gas processing plants. 40 C.F.R. §§ 60.630(a), 60.632(a), (d), and (e).

81.     Subpart VV at 40 C.F.R. § 60.482-1 sets forth general standards for owners and operators subject to Subpart VV and, among other things, specifies at 40 C.F.R. § 60.482-1(b) that methods of compliance determination include review of records and reports, review of performance test results, and inspection using the methods and procedures specified in 40 C.F.R. § 60.485.

82.     Subpart VV at 40 C.F.R. § 60.482-6 sets forth standards for open-ended valves or lines, including the requirement at 40 C.F.R. § 60.482-6(a)(2) that a cap, blind flange, plug, or second valve shall seal the open end at all times except during operations requiring process fluid flow through the open-ended valve or line.

83.     Subpart VV at 40 C.F.R. § 60.482-7 sets forth standards for valves in gas/vapor and in light liquid service, including the requirement at 40 C.F.R. § 60.482-7(a)(1) that each

valve be monitored monthly to detect leaks by the methods specified in 40 C.F.R. § 60.485(b) and that each valve shall comply with 40 C.F.R. § 60.482-7(b)–(e). 40 C.F.R. § 60.482-7(a)(1).

84.     Subpart VV at 40 C.F.R. § 60.482-7(c)(2) specifies that any valve that is required to be monitored quarterly that is found to be leaking must be monitored monthly until a leak is not detected for two successive months.

85.     Subpart VV at 40 C.F.R. § 60.485(b) requires owners and operators to determine compliance with applicable standards using Method 21.

86.     Subpart VV at 40 C.F.R. § 60.485(b)(1) requires that the instrument used to perform Method 21 shall be calibrated before use each day of its use by procedures specified in Method 21.

87.     The NSPS Appendix A, at 40 C.F.R. Part 60, Method 21, §§ 8.1.1.1, 8.2, and 10.1, specify the calibration procedures for the instrument used to detect leaks.

88.     The NSPS Appendix A, at 40 C.F.R. Part 60, Method 21, §§ 8.3.1 and 8.3.1.1, sets forth the technique that must be used to determine if there is a leak from a valve.

89.     Subpart VV at 40 C.F.R. § 60.486(b) sets forth requirements for identification of leaking components.

90.     Subpart VV at 40 C.F.R. § 60.486(e)(1) sets forth the recordkeeping requirements for identifying all equipment subject to the standards in 40 C.F.R. §§ 60.482-1 to 60.482-10.

   **F.     NSPS Subpart NNN**

91.     On June 29, 1990, EPA promulgated Subpart NNN.  55 Fed. Reg. 26,942.

92.     Subpart NNN at 40 C.F.R. § 60.660(a) states that Subpart NNN applies to each affected facility designated in paragraph (b) of this section that is part of a process unit that

18

produces any of the chemicals listed in 40 C.F.R. § 60.667 as a product, co-product, by-product, or intermediate, except as provided in paragraph (c).

93.     Subpart NNN at 40 C.F.R. § 60.660(b) states the affected facility is any of the following for which construction, modification, or reconstruction commenced after December 30, 1983:

    a.  Each distillation unit not discharging its vent stream into a recovery system.

    b.  Each combination of a distillation unit and the recovery system into which its vent stream is discharged.

    c.  Each combination of two or more distillation units and the common recovery system into which their vent streams are discharged.

94.     Subpart NNN at 40 C.F.R. § 60.661 defines "Distillation operation" as an operation separating one or more feed stream(s) into two or more exit stream(s), each exit stream having component concentrations different from those in the feed stream(s).  The separation is achieved by the redistribution of the components between the liquid and vapor-phase as they approach equilibrium within the distillation unit.

95.     Subpart NNN at 40 C.F.R. § 60.661 defines "Distillation unit" as a device or vessel in which distillation operations occur, including all associated internals (such as trays or packing) and accessories (such as reboiler, condenser, vacuum pump, steam jet, etc.), plus any associated recovery system.

96.     Subpart NNN at 40 C.F.R. § 60.662 states that each owner or operator of any affected facility shall comply with paragraph (a), (b), or (c) of this section for each vent stream on and after the date on which the initial performance test required by 40 C.F.R. § 60.8 and 40 C.F.R. § 60.664 is completed, but not later than 60 days after achieving the maximum production

rate at which the affected facility will be operated, or 180 days after the initial start-up, whichever date comes first.

97.     Subpart NNN at 40 C.F.R. § 60.663 sets forth the monitoring of emissions and operations for control devices including flares, boilers or process heaters, and condensers used as a final recovery device in a recovery system.

98.     Subpart NNN at 40 C.F.R. § 60.665(a) states that each owner or operator subject to 40 C.F.R. § 60.662 shall notify the Administrator of the specific provisions of 40 C.F.R. § 60.662 with which the owner or operator has elected to comply. Notification shall be submitted with the notification of initial start-up required by 40 C.F.R. § 60.7(a)(3).  If an owner or operator elects at a later date to use an alternative provision of 40 C.F.R. § 60.662 with which he or she will comply, then the Administrator shall be notified by the owner or operator 90 days before implementing a change, and upon implementing the change, a performance test shall be performed as specified by 40 C.F.R. § 60.664 within 180 days.

99.     Subpart NNN at 40 C.F.R. § 60.665(b) states that each owner or operator subject to the provisions of this subpart shall keep an up-to-date, readily accessible record of the following data measured during each performance test, and also include the following data in the report of the initial performance test required under 40 C.F.R. § 60.8. Where a boiler or process heater with a design heat input capacity of 44 megawatts ("MW") (150 million Btu/hour) or greater is used to comply with 40 C.F.R. § 60.662(a), a report containing performance test data need not be submitted, but a report containing the information in 40 C.F.R. § 60.665(b)(2)(i) is required. The same data specified in this section shall be submitted in the reports of all subsequently required performance tests where either the emission control efficiency of a control

device, outlet concentration of total organic concentration, or the total resource effectiveness

index value of a vent stream from a recovery system is determined.

      **G.**    **NSPS Subpart Kb**

    100.    On April 8, 1987, EPA promulgated NSPS Subpart Kb.  See 52 Fed. Reg. 11,429.

    101.    Subpart Kb at 40 C.F.R. § 60.110b(a) states that except as provided in paragraph

(b) of this section, the affected facility to which this subpart applies is each storage vessel with a

capacity greater than or equal to 75 cubic meters ("m3") that is used to store volatile organic

liquids ("VOL") for which construction, reconstruction, or modification is commenced after July

23, 1984.

    102.    Subpart Kb at 40 C.F.R. § 60.112b(a) states that the owner or operator of each

storage vessel either with a design capacity greater than or equal to 151 m3 containing a VOL

that, as stored, has a maximum true vapor pressure equal to or greater than 5.2 kiloPascal ("kPa")

but less than 76.6 kPa or with a design capacity greater than or equal to 75 m3 but less than 151

m3 containing a VOL that, as stored, has a maximum true vapor pressure equal to or greater than

27.6 kPa but less than 76.6 kPa, shall equip each storage vessel with one of four compliance

options, including, at 40 C.F.R. 40 C.F.R. § 60.112b(a)(3), the following option:

    (3)    A closed vent system and control device meeting the following specifications:

        (i)  The closed vent system shall be designed to collect all VOC vapors and gases

            discharged from the storage vessel and operated with no detectable emissions

            as indicated by an instrument reading of less than 500 ppm above

            background and visual inspections, as determined in Part 60, Subpart VV, 40

            C.F.R. § 60.485(b).

21

(ii)   The control device shall be designed and operated to reduce inlet VOC emissions by 95 percent or greater.  If a flare is used as the control device, it shall meet the specifications described in the general control device requirements (§ 60.18) of the General Provisions.

**H.    NSPS Subpart Db**

103.    On June 13, 2007, EPA promulgated 40 C.F.R. Part 60, Subpart Db.  72 Fed. Reg. 32742.

104.    Subpart Db at 40 C.F.R. §§ 60.40b-49b provides that the owner or operator of an affected facility with a steam generating unit with a design firing rate greater than 29 MegaWatts/100 MM BTU/hr for which construction, modification or reconstruction commenced after June 9, 1989, shall:  submit an initial notification in accordance with 40 C.F.R. § 60.49b; conduct an initial performance test in accordance with 40 C.F.R. § 60.46b; conduct emission monitoring of NOx, and comply with 40 C.F.R. § 60.48b(b) through (e); continuously comply with the limit of 0.10 lb/MM Btu as required by 40 § 60.44b(a); and report and record as required by 40 C.F.R. § 60.49b.

**I.    NSPS Subpart Dc**

105.    On June 13, 2007, EPA promulgated Subpart Dc.  72 Fed. Reg. 32742.  Subpart Dc was amended on January 28, 2009.  74 Fed. Reg. 5091.

106.    Subpart Dc at 40 C.F.R. §§ 60.40c-60.48c provides that the owner or operator of an affected facility with a steam generating unit with a design firing rate less than 29 MegaWatts/100 MM BTU/hr for which construction, modification or reconstruction commenced after June 9, 1989, shall submit an initial notification, and report and record as required by 40 C.F.R. § 60.48c.

**J.      PTIO Permit POI 16897**

107.    Section 110(a)(l) of the CAA, 42 U.S.C. § 7410(a)(1), requires each state to adopt

and submit to EPA for approval a SIP that provides for the implementation, maintenance, and

enforcement of the National Ambient Air Quality Standards ("NAAQS").  Pursuant to Section

110(a) of the CAA, 42 U.S.C. § 7410(a), each SIP must include a permit program to regulate the

modification and construction of any stationary source of air pollution as necessary to assure that

NAAQS are achieved.  Pursuant to Section 113(a) and (b) of the CAA, 42 U.S.C. § 7413(a) and

(b), upon EPA approval, SIP requirements are federally enforceable under Section 113. Pursuant

to 40 C.F.R. § 52.23, any permit limitation or condition contained within a permit issued under

an EPA-approved program that is incorporated in a SIP, is a requirement of the SIP, and is

federally enforceable under Section 113.

108.    On February 20, 2013, EPA approved revisions to OAC 3745-31, the regulations

governing the Ohio PTIO program, as part of the federally enforceable SIP for the State of Ohio.

See 78 Fed. Reg. 11,748.

109.    On October 14, 2014, Ohio EPA issued to the Hopedale Fractionation Plant PTIO

Permit No. PO 116897. Condition C.2.b.2.a. of the PTIO provides that for any transfer of natural

gas liquids from a pressurized storage tank to a railcar, the displaced vapors shall be collected

from a vapor recovery system.  The vapor recovery system shall be equipped with a vapor tight

vapor line from the pressurized storage tanks to the rail vessels and a means to ensure that the

vapor line is connected before natural gas liquids are transferred.  The vapor recovery system

23

shall be designed and operated to route at least 98.7 percent of displaced vapors from the loading

process back to the pressurized storage tanks.

## II.        Enforcement Provisions

110.    Section 113 of the CAA, 42 U.S.C. § 7413, authorizes EPA to commence a civil

action for injunctive relief and/or civil penalties against any person who has violated any

requirement or prohibition of the CAA or regulations promulgated thereunder, or who has

violated any applicable permit or implementation plan.

111.    Pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), as amended by the

Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 and the Debt

Collection Improvement Act, 31 U.S.C. § 3701 and 40 C.F.R. § 19.4, EPA may seek penalties of

up to $97,229 per day for violations of the CAA that occurred after November 2, 2015.

### General Allegations

112.    Each Defendant is the "owner or operator," as defined in Section 111(a)(5) of the

CAA, 42 U.S.C. §7411(a)(5), of one or more onshore natural gas processing plants.

113.    Plaintiff and PADEP allege that MPLX LP and MarkWest Liberty Midstream &

Resources, L.L.C. violated and/or continues to violate at the gas processing plant at its Houston

Facility the NSPS regulations promulgated pursuant to Section 111 of the CAA, 42 U.S.C.

§ 7411, and found at 40 C.F.R. Part 60, Subpart A, Subpart KKK, Subpart OOOO, Subpart VV

and Subpart VVa.

114.    Plaintiff alleges that MPLX LP and MarkWest Fractionation Company, L.L.C.

violated and/or continue to violate at the gas processing plant at their Hopedale Facility 40

C.F.R. Part 60, Subparts A, OOOO, VVa, NNN, and Kb; Condition C.2.b.2.a of the October 14,

2014 Permit to Install and Operate No. P0116897; and Ohio Administrative Code 3745-31.

115.     Plaintiff alleges that MPLX LP and MarkWest Utica EMG, L.L.C. violated and/or continue to violate at their Seneca Facility 40 C.F.R. Part 60, Subparts A, OOOO, and VVa.

116.     Plaintiff and State Co-Plaintiffs allege that Defendants violated and/or continue to violate 40 C.F.R. Part 60, Subparts A, KKK, OOOO, VVa, NNN, Kb and/or VV, at the gas processing plants at one or more of the Covered Facilities.

117.     Plaintiff and State Co-Plaintiffs allege that Defendants have violated and/or continue to violate 40 C.F.R. Part 60, Subpart Db, Standards of Performance for Industrial-Commercial-Institutional Steam Generating Units, and 40 C.F.R. Part 60, Subpart Dc, Standards of Performance for Small Industrial-Commercial-Institutional Steam Generating Units, at heaters located at the gas processing plants at one or more of the Covered Facilities.

**HOPEDALE FACILITY**

118.     Defendants MPLX LP and MarkWest Ohio Fractionation Company, L.L.C. ("Hopedale Defendants") own and operate an onshore natural gas processing plant, at 6155 E. US Route 6, Jewett, Ohio, called the Hopedale Fractionating Plant ("Hopedale Facility"), which removes natural gas liquids from field gas and fractionates the natural gas liquids.

119.     On December 12, 2013, Hopedale Defendants notified the Ohio Environmental Protection Agency that the Hopedale Facility is subject to Subpart OOOO (and by reference Subparts VVa and A) and Kb.

120.     Since January 2014, Hopedale Defendants have produced propane, listed in 40 C.F.R. §§ 60.667 and 60.707, as a product, co-product, by-product, or intermediate from the two de-propranizers (one in the FRAC1 process unit and one in the FRAC2 process unit).

121. Since January 2014, Hopedale Defendants have produced n-butane and butanes, all listed in 40 C.F.R. §§ 60.667 and 60.707, as a product, co-product, by-product, or intermediate from the de-butanizer in the FRAC2 process unit.

122. Hopedale Defendants operate distillation units in the FRAC1 and FRAC2 process units at the Hopedale Facility.

123. Hopedale Defendants' distillation units in the FRAC1 and FRAC2 process units are "affected facilities" subject to Subparts NNN.

124. Hopedale Defendants have not submitted a notification that the Hopedale Facility's distillation units are subject to Subparts NNN.

125. Hopedale Defendants operate two 6,360 $m^3$ (approximately 40,000 barrels) natural gasoline storage tanks that are subject to Subpart Kb.

126. During EPA's May 26-28, 2015 (May 2015) inspection, EPA observed the pressure relief devices on each of the natural gasoline storage tanks to be venting to atmosphere using an infrared camera, which was confirmed by Hopedale Defendants using a portable VOC instrument with the following readings:

a. Tag# 11251 - 1,977 ppm

b. Tag# 11252 - 26,297 ppm

c. Tag# 2845 - 4,781 ppm

127. In reviewing Hopedale Defendants' leak history, EPA discovered two leaks at a valve (Valve Tag # 000687) and a connector (Connector Tag #003383) that did not have a first attempt at repair within 5 days.

128. For the three quarterly monitoring events since July 2015, Hopedale Defendants reported an average of 0.98% as the percentage of valves leaking in the FRAC1, Railroad, and

Truck Loading process units, whereas EPA found a 2.89% leaking rate during the May 2015 inspection.

129.    Hopedale Defendants utilize a flare to control emissions from pressure relief devices at the Hopedale Facility to comply with requirements for pressure relief devices under Subparts OOOO and VVa.

130.    Hopedale Defendants operate approximately 75 pilot designed pressure relief devices throughout the Hopedale Facility.  These pilot pressure relief devices are designed to release gas directly to atmosphere from the pilot vents with any overpressure greater than 1 percent and up to 15 percent prior to actuating the main pressure-relief valve to the flare.

131.    During the May 2015 inspection, EPA identified a pressure relief device (Tag # 000829) at the FRAC1 process unit venting to atmosphere using a portable VOC instrument (reading 2,800 ppm), which was confirmed by Hopedale Defendants tagging the pressure relief device as leaking.

132.    During the May 2015 inspection, EPA observed several connections between the loading arm and the top of the railcar that were not vapor tight or capturing all the material being loaded, based upon identifying vented VOC emissions using an infrared camera and a portable VOC instrument with the following readings:

| Tag # | Equipment | EPA Reading | MarkWest Reading |
|---|---|---|---|
| 4470 | Hoses | 830 | Not Confirmed |
| 5026 | Hoses | 722 | Not Confirmed |
| 4706 | Hoses | 1,300 | 6,378 |
| 4353 | Connector 1 on Hose (Bay 5 South) | 18,000 | 17,079 |
| 4353 | Connector 2 on Hose (Bay 5 South) | 25,000 | Flameout |

27

| 4035 | Connector 1 on Hose (Bay 4 South) | 16,000 | Not Confirmed |
|---|---|---|---|

133.    Hopedale Defendants also operate a railcar loading operation at the railcar area of the Hopedale Facility that is used to distribute natural gas liquids (i.e., propane, butane, and natural gasoline) to customers.

134.    To control VOC emissions from pressure relief devices at the railcar loading operation, Hopedale Defendants operate an enclosed combustion device located at the facility's railcar area.  The railcar enclosed combustion device is subject to the Subpart VVa requirement for control devices at 40 C.F.R. § 60-482-10a.

135.    During the May 2015 inspection, EPA requested information regarding combustion control temperature data and manufacturer design specifications for the enclosed combustion device located at the site's railcar area.

136.    On October 21, 2015, Hopedale Defendants submitted a response (the "October 2015 response") that included daily temperature readings, including daily temperature minimum, average, and maximum for the period of February 15, 2014 through June 15, 2015.

137.    In the October 2015 response, Hopedale Defendants provided the manufacturer's performance data sheet for the enclosed combustion device that indicated a total hydrocarbon destruction efficiency of 98 percent when operated at a 1650ºF combustion control temperature.

138.    On March 29, 2016, EPA issued a Section 114 information request for additional information regarding the enclosed combustion device located at the railcar loading operations.

139.    On May 3, 2016, Hopedale Defendants submitted a response that included daily temperature readings, including daily temperature minimum, average, and maximum for the period of July 2, 2015 through April 1, 2016.

140.    Based on the review of the October 2015 and May 3, 2016 responses, Hopedale Defendants did not operate the railcar enclosed combustion device above 816ºC (1500.8ºF) for 669 days for the period of February 15, 2014 through April 1, 2016.

141.    Based on Hopedale Defendants' May 3, 2016 response to the March 2016 information request, Hopedale Defendants have not conducted a performance test for the railcar enclosed combustion device.

**SENECA FACILITY**

142.    Defendants MPLX LP and MarkWest Utica EMG, L.L.C. ("Seneca Defendants") own and operate an onshore natural gas processing plant, at 26645 Zep Road East, Summerfield, Ohio, called the Seneca Gas Plant ("Seneca Facility"), which removes natural gas liquids from field gas.

143.    On November 4, 2013, Seneca Defendants notified Ohio EPA that the Seneca Facility is subject to Subpart OOOO (and by reference Subpart VVa).

144.    EPA conducted an inspection of the Seneca Facility on April 25-28, 2016 (April 2016 inspection).

145.    During the April 2016 inspection, EPA reviewed records indicating that Seneca Defendants did not calibrate their portable volatile organic compound ("VOC") monitor with the appropriate calibration gas prior to performing Method 21 monitoring of pumps for the following months: October 2014; November 2014; December 2014; January 2015; February 2015; March 2015; and September 2015.

146.    During the April 2016 inspection, EPA observed greater than 10,000 parts per million (ppm) of VOC venting from an open-ended valve or line not properly connected into a

dew point analyzer in the Seneca 3 process unit. In addition, EPA imaged significant hydrocarbons from this sample line using an infrared camera.

147. During the April 2016 inspection, EPA observed the following valves with insulation preventing Method 21 from being performed at the surface of the valve where leakage could occur: Tag No. 179EE in Inlet; Tag Nos. 909, 910, 925, 924, 939, 1013, 1009, and 868 in Seneca 1; Tag Nos. 2157, 1620, 1618 in Seneca 2; and Tag Nos. 2850, 2755, and 2756 in Seneca 3.

148. During the April 2016 inspection, EPA reviewed records indicating Seneca Defendants did not complete a weekly visual inspection for four pumps for three weeks in August 2015.

149. During the April 2016 inspection, EPA observed pressure relief devices that are routed through a vent system to a flare.

150. On May 19, 2016 (May 2016 Letter), Seneca Defendants submitted follow-up information requested during the April 2016 inspection.

151. In the May 2016 Letter, Seneca Defendants indicated that they were unable to retrieve any records of weekly visual pump inspections for February 2014.

152. During the April 2016 inspection, EPA observed three open-ended valves or lines, with Tag Nos. 758, 759, and 1038 that did not have sealed closure devices.

153. Based on a review of Seneca Defendants' leak detection and repair ("LDAR") database, which Seneca Defendants provided to EPA during the April 2016 inspection, EPA identified the following connectors that Seneca Defendants had not monitored initially within 12 months:

| Process Unit | Number of Connectors | Start-Up of Process Unit | Initial Monitoring Date |
|---|---|---|---|
| Flare | 84 | October 2013 | January 2016 |
| Inlet | 1,135 | October 2013 | June 2015 |
| Seneca 1 | 1,580 | October 2013 | June 2015 |
| Seneca 1 | 113 | October 2013 | August 2015 |
| Seneca 1 | 166 | October 2013 | February 2016 |
| Seneca 2 | 11 | February 2014 | June 2015 |
| Seneca 2 | 120 | February 2014 | August 2015 |
| Seneca 2 | 432 | February 2014 | February 2016 |
| Seneca 3 | 105 | July 2014 | October 2015 |

154.    Based on a review of Seneca Defendants' LDAR database, EPA identified the following number of valves, including bleeder valves from 5-way assemblies, that Seneca Defendants had not monitored initially within 30 days of process unit start-up:

| Process Unit | Number of Valves | Start-Up of Process Unit | Initial Monitoring Date |
|---|---|---|---|
| Flare | 27 | October 2013 | March 2014 |
| Flare | 2 | October 2013 | August 2015 |
| Inlet | 441 | October 2013 | March 2014 |
| Inlet | 204 | October 2013 | June 2015 |
| Seneca 1 | 842 | October 2013 | March 2014 |
| Seneca 1 | 124 | October 2013 | June 2015 |
| Seneca 1 | 62 | October 2013 | August 2015 |
| Seneca 2 | 782 | February 2014 | November 2014 |

| | | | |
|---|---|---|---|
| Seneca 2 | 43 | February 2014 | June 2015 |
| Seneca 2 | 97 | February 2014 | July 2015 |
| Seneca 3 | 893 | July 2014 | February 2015 |
| Seneca 3 | 56 | July 2014 | June 2015 |
| Seneca 3 | 60 | July 2014 | October 2015 |

155.    Based on a review of Seneca Defendants' LDAR database, EPA identified the follow pressure relief valves that leaked above 500 ppm:

| Process Unit | Tag Number | Date | Concentration (ppm) |
|---|---|---|---|
| Inlet | 00019 | July 27, 2015 | 6,264 |
| Seneca I | 01183 | April 18, 2015 | 954 |
| Seneca 2 | 02031 | December 11, 2014 | 16,393 |
| Seneca 4 | 03711 | August 27, 2015 | 1,291 |
| Seneca 4 | 03804 | January 21, 2016 | 144,695 |

156.    Based on a review of Seneca Defendants' leak history, EPA discovered the following leaks that did not have a first attempt at repair within 5 days:

| Tag # | Date | Component Type |
|---|---|---|
| 03446 | July 9, 2015 | Valve |
| 01212 | July 31, 2015 | Connector |
| 02090 | June 18, 2015 | Connector |

157.    For the monthly and quarterly monitoring events since March 2014, Seneca Defendants reported an average of 2.39 as the percentage of valves leaking in the Seneca 1,

32

Seneca 2, and Seneca 3 process units, whereas EPA found a 4.66% leaking rate during the April 2016 inspection.

158.    Seneca Defendants operate pilot designed pressure relief devices throughout the Seneca Facility.  These pilot pressure relief devices are designed to release gas directly to the atmosphere from the pilot vents with any overpressure greater than 1 percent and up to 15 percent prior to actuating the main pressure-relief valve to the flare.

159.    During the April 2016 inspection, EPA identified a pilot designed pressure relief device (Tag No. 00689) at the Seneca 1 process unit venting to the atmosphere instead of the flare header using a portable VOC instrument (reading 1,900 ppm), which was confirmed by Seneca Defendants tagging the pressure relief device as leaking.

**HOUSTON FACILITY**

160.    MPLX LP and Mark West Liberty Midstream & Resources, L.L.C. ("Houston Defendants") are the owners and operators of the Houston Facility.

161.    The Houston Facility is an onshore natural gas processing plant (as that term is defined at 40 C.F.R. §§ 60.631 and 60.5430), because it is engaged in operations associated with the processing of natural gas products, including the gathering, processing and transportation of natural gas and natural gas liquids.

162.    The Houston Facility was initially constructed and commenced operation in or around October of 2008 (after January 20, 1984 and before August 23, 2011, the applicability date for NSPS Subpart KKK related to equipment within process units at onshore natural gas process units constructed during that time period).

163.    Portions of the Houston Facility that were constructed, modified or reconstructed before August 23, 2011 are subject to Subpart KKK (and by reference, the equipment leak

standard requirements set forth in the provisions of Subpart VV).  Other portions of the Houston Facility that were constructed, modified or reconstructed on or after August 23, 2011 are subject to Subpart OOOO (and by reference, the equipment leak standard requirements set forth in the provisions of Subpart VVa), because those portions are located at an onshore natural gas processing plant which is engaged in the extraction of natural gas liquids from field gas, the fractionation of mixed natural gas liquids to natural gas products or both, and portions of the Houston Facility have equipment located in affected process units that were constructed or modified after August 23, 2011.

164.    The Houston Facility receives raw field gas from natural gas wells and separates the natural gas from the remaining constituents of the gas (ethane, butane, propane and natural gasoline). There are currently four (4) "plants" operating at the Houston Facility that contain a combination of de-ethanizers, de-propopanizers, and de-butanizers. "Plant 4" was under construction at the time of EPA's April 28-30, 2015 compliance inspection.  Plant 4 has the capacity to process 200 million standard cubic feet per day ("MMscf/day") of natural gas.  The Facility currently processes an average of 325-330 MMscf/day of natural gas, with a total capacity of 550 MMscf/day.  There are two (2) flares located at the Houston Facility, that are used to control process upsets and process blowdowns from the various plants and the truck loadout.  There is also a portable flare located within the railcar loading area of the Facility.  The railcar loading area is considered part of the MarkWest Houston Gas Plant for emission inventory purposes.

165.    The Houston Facility is identified in an October 4, 2012 Plan Approval the Pennsylvania Department of Environmental Protection ("PADEP") (Plan Approval No. 63-00936F) issued to "Mark West Liberty Midstream & Resources/Houston Gas PLT," located in

Chartiers Township, Washington County, PA.  The Plan Approval was issued as an extension of previous plan approvals, beginning in July 2008 (*See* Plan Approval GPS-63-00936).

166.    The Plan Approval terms and conditions provide that Mark West Liberty Midstream & Resources must comply with the applicable requirements of Subparts KKK and OOOO for equipment leaks of VOC from onshore natural gas processing plants, including the implementation of a leak detection and repair program performed to minimize VOC emissions.

167.    The Houston Facility is currently permitted as a minor source for all criteria pollutants and hazardous air pollutants ("HAPs"). The Houston Facility is located in an area that is designated as attainment for nitrogen oxide ("NOx"), sulfur dioxide ("SO2") and particulate matter ("PM"), and marginal non-attainment for ozone.

168.    On April 28-30, 2015, duly authorized representatives from EPA Region 3 and PADEP conducted an air compliance inspection of the Houston Facility (the "April 2015 Air Compliance Inspection").  The scope of the April 2015 Air Compliance Inspection included on-site LDAR monitoring over a period of three days. EPA inspectors utilized an infrared camera to observe and obtain video documentation of emission leaks at the Houston Facility. The Respondent was notified of the inspection in advance on April 27, 2015.

169.    During the April 2015 Air Compliance Inspection, Houston Defendants confirmed that the Houston Facility was subject to the provisions of Subparts KKK and OOOO. Houston Defendants also specifically identified the following process units within the Houston Facility as being subject to NSPS Subparts KKK and OOOO:  Houston I (KKK); Houston 2 (KKK); Houston 3 (KKK); Frac 1 (OOOO); Frac 2 (OOOO); De-Ethanizer (OOOO); Railcar Yard (OOOO); De-Propanizer 5 (OOOO); Pad 1 and 4 (KKK); and Pads 2 and 3 (OOOO).

170.    EPA identified several areas in which the Houston Facility's LDAR monitoring program deviated from Subpart OOOO requirements during the April 2015 Air Compliance Inspection, including:

a)    Instances in which EPA inspectors observed affected components missing LDAR program tags, and the failure to include those affected components in Houston Defendants' LDAR program. After the inspection, Houston Defendants stated that 281 valves, 660 connectors, and 18 process safety valves that had previously not been included in its LDAR program had now been identified and tagged.  EPA inspectors also observed missing tags on: the Mariner East propane line; sections in Truck Loading; new components in Houston 1, Frac 2, De-Propanizer 5, and the Railcar Loading Rack, where several of the loading rack arms were missing LDAR tags and there were numerous leaks where the arms attach directly to the cars. Emissions of VOCs and HAPs that occur during loading of railcars and are not captured and controlled, resulting in potential underreporting of emissions to PADEP.

b)    Open-ended lines were observed in several process units (e.g., Houston 1, Truck Loading, De-Propanizer 5, Frac 1, and Frac 2) with no block valve.  These process units are subject to either Subpart KKK or OOOO.  Under both subparts, open ended lines must be equipped with a cap, blind flange, plug, or second valve except in prescribed circumstances.  See 40 C.F.R. § 60.482-6(a)(1) (Subpart KKK); 40 C.F.R. § 60.5400(a), referencing 40 C.F.R. § 60.482-6a(a)(l) (Subpart OOOO).

c)    Approximately ten (10) insulated valves in several process units in Houston 1 failed to provide adequate access to conduct Method 21 fugitive leak monitoring. Houston 1 is subject to Subpart KKK which references the LDAR requirements in Subpart VV.  40 C.F.R. § 60.485(b)(l) of Subpart VV requires that Method 21 shall be used to determine the presence of

leaking sources.  Section 8.3.l of 40 C.F.R. Appendix A Method 21 requires that the monitoring probe inlet shall be placed at the surface of the component interface where leakage could occur.

       d)    Valve leak rates EPA monitored during the April 2015 Compliance Inspection were not consistent with valve leak rates reported by Houston Defendants during their routine leak scans. This reflects a failure by Houston Defendants to utilize Method 21 to determine the presence of leaks as required under Subparts KKK and OOOO by reference to Subparts VV (40 C.F.R. § 60.485(b)(l)) and VVa (40 C.F.R. § 60.485a(b)(l)).

       e)    Evidence of several continuously leaking process safety valves that were not accounted for in emission calculations. EPA identified these areas with the use of an infrared camera.

**FIRST CAUSE OF ACTION**

**(Violations of NSPS at Hopedale Facility)**

171.    Paragraphs 1 through 170 are realleged and incorporated herein by reference.

172.    Hopedale Defendants failed to have access to perform Method 21 properly on 5 insulated valves (4 valves in FRAC1 and 1 valve in FRAC2), in violation of NSPS Subpart VVa (40 C.F.R. § 60.482-7a(a)(l)) (and by reference § 60.485(b)), and 40 C.F.R. Part 60, Method 21 §§ 8.3.1 and 8.3.1.1., and Section 111(e) of the CAA.

173.    Hopedale Defendants failed to identify and monitor 10 valves (8 bleeder valves in FRACl and 2 bleeder valves in FRAC2) subject to the standards set forth at NSPS Subpart VVa (40 C.F.R. §§ 60.482-la to 60.482-1la), in violation of NSPS Subparts OOOO (40 C.F.R. § 60.5400(a)) and VVa (40 C.F.R. § 60.482-7a(a)(l)), and Section 111(e) of the CAA.

174.     From at least July 2014 until May 2015, Hopedale Defendants failed to perform Method 21 properly on valves, in violation of NSPS Subpart VVa (40 C.F.R. § 60.482-7a(a)(l)), 40 C.F.R. Part 60, Method 21 §§ 8.3.1 and 8.3.1.1, and Section 111(e) of the CAA.

175.     Hopedale Defendants failed to perform the initial monthly monitoring of all pumps in each process unit at the Hopedale Facility within 30 days after the end of the startup period in violation of Subpart VVa (40 C.F.R. § 60.482-2a(a)(l)), and Section 111(e) of the CAA.

176.     Hopedale Defendants failed to perform initial monthly monitoring of all valves within 30 days in process units at the Hopedale Facility after the initial startup date in violation of NSPS Subparts VVa (40 C.F.R. §§ 482-7a(a)(1) and 60.482-7a(a)(2)), and Section 111(e) of the CAA.

177.     Hopedale Defendants failed to equip each open-ended valve or line at the Hopedale Facility with a cap, blind flange, plug, or a second valve in violation of NSPS Subparts VVa (40 C.F.R. § 60.482-6a(a)(l)) and OOOO (40 C.F.R. § 60.5400(a)), and Section 111(e) of the CAA.

178.     Hopedale Defendants failed to seal each open-ended valve or line at the Hopedale Facility with a cap, blind flange, plug, or a second valve in violation of NSPS Subparts OOOO (40 C.F.R. § 60.5400(a)) and VVa (40 C.F.R.  § 60.482-6a(a)(2)), and Section 111(e) of the CAA.

179.     Hopedale Defendants failed to perform weekly visual inspections on pumps in each of the process units at the Hopedale Facility for the period of January 2014 through February 2015 in violation of NSPS Subparts VVa (40 C.F.R. § 60.482a(a)(2)), and Section 111(e) of the CAA.

180.    Hopedale Defendants failed to make timely first attempts at repairs of a leaking valve within 5 days of leak detection at the Hopedale Facility, in violation of NSPS Subparts VVa (40 C.F.R. § 60.482-7a(d)(2)), and Section 111(e) of the CAA.

181.    Hopedale Defendants failed to make timely first attempts at repairs of a leaking connector within 5 days of leak detection, in violation of NSPS Subparts VVa (40 C.F.R. § 60.482-11a(d), and Section 111(e) of the CAA.

182.    Hopedale Defendants failed to demonstrate compliance with the provisions of Subpart NNN for its distillation operations and meet Subpart NNN's monitoring, recordkeeping, and reporting requirements at the Hopedale Facility, in violation of NSPS Subpart NNN (40 C.F.R. §§ 60.662, 60.663, 60.665(a), and 60.665(b)), and Section 111(e) of the CAA.

183.    Hopedale Defendants failed to comply with the closed vent and control device requirements for pilot-designed pressure relief devices at the Hopedale Facility, in violation of NSPS Subparts VVa (40 C.F.R. §§ 60.5400(a)) and OOOO (40 C.F.R. § 60.482-4a(c), and Section 111(e) of the CAA.

184.    Hopedale Defendants failed to comply with the emission control requirements of Subpart NNN with respect to uncontrolled vented emissions from the pilot designed pressure relief devices associated with subject distillation operations and reactor processes, in violation of NSPS Subpart NNN (40 C.F.R. § 60.662), and Section 111(e) of the CAA.

185.    Based on observations of uncontrolled vented emissions from pressure relief devices on the two natural gasoline storage tanks during the inspection of the Hopedale Facility, Hopedale Defendants failed to design a closed-vent system on each natural gasoline storage vessel that collects VOC vapors and gases discharged from the storage vessel and operated with no detectable emissions as indicated by an instrument reading of less than 500 ppm above

39

background, in violation of NSPS Subpart Kb (40 C.F.R. § 60.12b(a)(3)(i)), and Section 111(e) of the CAA.

186.    Based on observations of uncontrolled vented emissions from pressure relief devices on the two natural gasoline storage tanks at the inspection of the Hopedale Facility Hopedale Defendants failed to reduce inlet VOC emissions by 95 percent or greater for each natural gasoline storage vessel in violation of NSPS Subpart Kb (40 C.F.R. § 60.112b(a)(3)(ii)), and Section 111(e) of the CAA.

187.    Hopedale Defendants failed to operate the railcar enclosed combustion device at the Hopedale Facility to reduce VOC emissions vented to it with an efficiency of 95 percent or greater, or to an exit concentration of 20 ppmv, on a dry basis, corrected to 3 percent oxygen, with a minimum temperature of 816°C (l,500.8°F) and a residence time of 0.75 seconds, in violation of NSPS Subparts OOOO (40 C.F.R. §§ 60.5400(a)) and VVa (60.482-10a(c)), and Section 111(e) of the CAA.

188.    Hopedale Defendants failed to conduct a performance test of the enclosed combustion device located in the railcar area at the Hopedale Facility to demonstrate compliance with NSPS Subpart VVa (40 C.F.R. § 60.482-10a(c)) in violation of Subpart A (40 C.F.R. § 60.8(a)), and Section 111(e) of the CAA.

189.    By not appropriately monitoring to ensure the enclosed combustion device met the standards set forth in 40 C.F.R. § 60.482-l0a(c), Hopedale Defendants failed to monitor the enclosed combustion device located in the railcar loading area of the Hopedale Facility to ensure that it is operated and maintained in conformance with its design, in violation of NSPS Subparts OOOO (40 C.F.R. §§ 60.5400(a)) and VVa (60.482-10a(e)), and Section 111(e) of the CAA.

190.    For the violations asserted in this First Cause of Action, pursuant to

Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990,

Hopedale Defendants are subject to civil penalties of up to $27,500 per day for each violation

between January 31, 1997, and March 15, 2004; up to $32,500 per day for each violation

between March 16, 2004, and January 12, 2009; up to $37,500 per day for each violation after

January 13, 2009 through November 2, 2015; and up to $97,229 per day for each violation after

November 2, 2015.

## SECOND CAUSE OF ACTION

### Violations of PTIO Permit No. P0116897
### (Hopedale Facility)

191.    Paragraphs 1 through 190 are realleged and incorporated herein by reference.

192.    Hopedale Defendants failed to operate a vapor tight vapor line on transfers of

natural gas liquids from a pressurized storage tank to a railcar in violation of Condition C.2.b.2.a.

of PTIO Permit No. P0116897.

193.    For the violations asserted in this Second Cause of Action, pursuant to

Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990,

Hopedale Defendants are subject to civil penalties of up to $27,500 per day for each violation

between January 31, 1997, and March 15, 2004; up to $32,500 per day for each violation

between March 16, 2004, and January 12, 2009; up to $37,500 per day for each violation after

January 13, 2009 through November 2, 2015; and up to $97,229 per day for each violation after

November 2, 2015.

## THIRD CAUSE OF ACTION

### (Violations of NSPS at Houston Facility)

194.    Paragraphs 1 through 193 are realleged and incorporated herein by reference.

195.    Until at least April 2015, Houston Defendants failed to keep records of affected equipment subject to Subpart OOOO at the Houston Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5365(f)(2)), and Section 111(e) of the CAA.

196.    Houston Defendants failed to monitor affected valves and connectors associated with the Mariner East Pipeline at the Houston Facility from at least December 2014 through April 2015, in violation of NSPS Subpart OOOO (40 C.F.R. §§ 60.5365(f)(2) and 60.5400(a)), NSPS Subpart VVa (40 C.F.R. §§ 60.482-7a and 60.482-11a), and Section 111(e) of the CAA.

197.    From at least July 2012 through April 2015, Houston Defendants failed to identify, record, and monitor valves and connectors located within the pressurized storage tank area ("Storage Pad 3") of the Houston Facility, in violation of NSPS Subpart OOOO (40 C.F.R. §§ 60.5365, 60.5400(a)) and VVa (40 C.F.R. §§ 60.482-7a, 60.482-11a), and Section 111(e) of the CAA.

198.    Houston Defendants failed to tag and include several valves located within the truck loading area at the Houston Facility in the LDAR program and failed to monitor these valves in violation of NSPS Subpart VVa (40 C.F.R. §§ 60.632(a), 60.482-7(a)), and Section 111(e) of the CAA.

199.    Until at least April 2015, Houston Defendants failed to double block the following "open-ended valves or lines" at the Houston Facility with a cap, blind flange, plug, or a second valve, in violation of NSPS Subpart KKK (40 C.F.R. §§ 60.632(a)) and NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)),  related  requirements in Subparts VV and VVa, and Section 111(e) of the CAA:  Houston 1, Component ID 1534 (Subpart KKK); Truck Loading, Component ID 6227, (Subpart KKK); De-Propanizer (Frac), Component ID 4338 (Subpart

OOOO); De-Propanizer 5, Component ID 8676 (Subpart OOOO): De-Propanizer 5, Component ID 8736 (Subpart OOOO); Truck Loading, Component ID 6189 (Subpart KKK); Truck Loading, Component ID 6172 (Subpart KKK); Frac 2, No Component ID, but next to Component ID 5575 (Subpart OOOO).

200.    Until at least April 2015, Houston Defendants failed to log each affected piece of equipment at the Houston Facility into its LDAR program and monitor those components as process changes were being made, in violation of NSPS Subpart VVa (40 C.F.R. §§ 60.482-7a, 60.486a(e)(l)), and Subpart OOOO (40 C.F.R. §  60.5400(a)) for Subpart OOOO affected components, and NSPS Subpart VV (40 C.F.R. §§ 60.482-7, 60.486(e)(l) and NSPS Subpart KKK (40 C.F.R. § 60.632(a)) for components subject to Subpart KKK, and Section 111(e) of the CAA:  3 valves to the right of Tag 001667 in Houston 1 (Subpart KKK); 3 valves above Tag 004353 in De-Propanizer 4 (Subpart KKK); 3 valves to the west of Tag 006160 in Truck Loading (Subpart KKK); 7 valves adjacent to Tag 000194 Houston 1 (Subpart KKK); No tags were observed on the closed drain tank (multiple valves) at the Truck Loading area (Subpart KKK); New control valve between valves 005775 and 005778 with no tags in Frac 2 (Subpart OOOO); and new piping between 005779 and 005780 with no tags in Frac 2 (Subpart OOOO).

201.    Until at least April 2015, Houston Defendants failed to operate pressure relief devices at the Houston Facility with no detectable emissions, in violation of NSPS Subpart VV (40 C.F.R. § 60.482-4), for Subpart KKK affected process safety valves, and NSPS Subpart VVa (40 C.F.R. §60.482-4a) for Subpart OOOO affected process safety valves, and Section 111(e) of the CAA.

202.    Until at least April 2015, Houston Defendants failed to have access to ten (10) insulated valves located in Houston 1 and the De-Ethanizer to adequately monitor for leaks under Method 21 at the Houston Facility, in violation of NSPS Subpart VV (40 C.F.R. § 60.485(b)(1)), 40 C.F.R. Part 60 Appendix A Method 21 Section 8.3.1.1, and Section 111(e) of the CAA.

203.    From at least April 2000 until at least April 2015, Houston Defendants failed to make a first attempt at repair on components subject to NSPS Subparts KKK or OOOO on at least 430 occasions at the Houston Facility, in violation of NSPS Subpart VV (40 C.F.R. §§ 60.482-7(d)(2)) and NSPS Subpart VVa (40 C.F.R. §§ 60.482-7a(d)(2)), which require Defendants to make a first attempt at repair within five (5) days on leaking valves in gas vapor or light liquid service, and in violation of NSPS Subpart VVa (40 C.F.R. § 60.482-11a(d)), which requires Defendants to make a first attempt at repair within 5 days after a leak is detected, and in violation of Section 111(e) of the CAA.

204.    From at least July 2014 until May 2015, Houston Defendants failed to perform Method 21 properly on certain valves in the De-Ethanizer, De-Propanizer and railcar loading station/rack units at the Houston Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)) and VVa (40 C.F.R. § 60.482-7a(a)(l)), 40 C.F.R. Part 60 Appendix A-7, Method 21, §§8.3.1 and 8.3.1.1, and Section 111(e) of the CAA,  for Subpart OOOO affected components.

205.    From at least July 2014 until May 2015, at the Houston Facility, Houston Defendants failed to perform Method 21 properly on valves in Houston 1, Frac 1, Storage/Load and Frac 2 units in violation of NSPS Subparts KKK (40 C.F.R. §§60.632(a)) and VV (60.482-7(a)(l)), 40 C.F.R. Part 60 Appendix A-7, Method 21, §§8.3. 1 and 8.3.1.1, and Section 111(e) of the CAA,  for Subpart KKK affected components.

206.    From October 2008 through the present, Houston Defendants failed to comply with NSPS Subpart NNN, including the notification, reporting, monitoring, testing and recordkeeping provisions contained therein at the Houston Facility, in violation of NSPS Subpart NNN, and Section 111(e) of the CAA.

207.    For the violations asserted in this Third Cause of Action, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, Houston Defendants are subject to civil penalties of up to $27,500 per day for each violation between January 31, 1997, and March 15, 2004; up to $32,500 per day for each violation between March 16, 2004, and January 12, 2009; up to $37,500 per day for each violation after January 13, 2009 through November 2, 2015; and up to $97,229 per day for each violation after November 2, 2015.

## FOURTH CAUSE OF ACTION

### (Violations of NSPS at Seneca Facility)

208.    Paragraphs 1 through 207 are realleged and incorporated herein by reference.

209.    Seneca Defendants failed to have access to perform Method 21 properly on 15 insulated valves at the Seneca Facility, in violation of NSPS Subparts OOOO (40 C.F.R. § 60.5400(a)), and VVa (40 C.F.R. § 60.482-7a(a)(1)) (and by reference 40 C.F.R. § 60.485(b)), and 40 C.F.R. Part 60, Method 21 §§ 8.3.1 and 8.3.1.1, and Section 111(e) of the CAA.

210.    Seneca Defendants failed to perform initial monthly monitoring of all valves, including bleeder valves from 5-way assemblies, within 30 days after the initial startup date for each process unit at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)), NSPS Subpart VVa (40 C.F.R. §§ 60.482-7a(a)(2), and 60.482-7a(a)(1)), and Section 111(e) of the CAA.

211.     Seneca Defendants failed to perform the initial monthly monitoring of all pumps in each process unit at the Seneca Facility within 30 days after the end of the startup period, and failed to conduct required monitoring of certain subject pumps on certain months, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)) and Subpart VVa (40 C.F.R. § 60.482-2a(a)(1)), and Section 111(e) of the CAA.

212.     Seneca Defendants failed to perform timely annual monitoring on all connectors at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)) and Subpart VVa (40 C.F.R. § 60.482-11a(a)), and Section 111(e) of the CAA.

213.     Seneca Defendants failed to seal each closure device associated with an open-ended valve or line with a cap, blind flange, plug, or a second valve at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)) and Subpart VVa (40 C.F.R. § 60.482-6a(a)(2)), and Section 111(e) of the CAA.

214.     Seneca Defendants failed to perform weekly visual inspections on pumps in each of the process units at the Seneca Facility for the period of October 2013 through February 2014, and for 4 pumps over 3 weeks in August 2015, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)) and Subpart VVa (40 C.F.R. § 60.482a(a)(2)), and Section 111(e) of the CAA.

215.     Seneca Defendants failed to make timely first attempts at repairs within 5 days for a valve at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)) and Subpart VVa (40 C.F.R. § 60.482-7a(d)(2)), and Section 111(e) of the CAA.

216.     Seneca Defendants failed to make timely first attempts at repairs within 5 days on connectors at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)), and Subpart VVa (40 C.F.R. § 60.482-11a(d)), and Section 111(e) of the CAA.

217.    Based on pilot-directed pressure relief device design information and VOC monitoring conducted during the April 2016 inspection, Seneca Defendants failed to comply with closed vent and control device requirements for pressure relief devices at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)), Subparts VVa (40 C.F.R. §§ 60.482-4a(c), and 60.482-10a(a)), and Section 111(e) of the CAA.

218.    For the open-ended valve or line venting to the atmosphere, Seneca Defendants failed to place a cap, a blind flange, a plug, or a second valve at the open-ended valve or line at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. §§ 60.5400(a)), and Subpart VVa (40 C.F.R. § 60.482-6a(a)(1)), and Section 111(e) of the CAA.

219.    Seneca Defendants failed to perform Method 21 properly on valves at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)), Subpart VVa (40 C.F.R. § 60.482-7a(a)(1)), 40 C.F.R. Part 60 Method 21, §§ 8.3.1 and 8.3.1.1., and Section 111(e) of the CAA.

220.    From at least March 2014 through March 2016, Seneca Defendants failed to perform Method 21 properly on pumps by not calibrating with the appropriate calibration standard at the Seneca Facility, in violation of NSPS Subpart OOOO (40 C.F.R. § 60.5400(a)), Subparts VVa (40 C.F.R. §§ 60.482-2(b)(1), 60.485a(b)(1)), and Section 111(e) of the CAA.

221.    For the violations asserted in this Fourth Cause of Action, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, Seneca Defendants are subject to civil penalties of up to $27,500 per day for each violation between January 31, 1997, and March 15, 2004; up to $32,500 per day for each violation between March 16, 2004, and January 12, 2009; up to $37,500 per day for each violation after

January 13, 2009 through November 2, 2015; and up to $97,229 per day for each violation after November 2, 2015.

## FIFTH CAUSE OF ACTION

### Violations of NSPS Subpart Db
### (Cadiz, Hopedale, Houston, Majorsville and Sherwood Facilities)

222.    Paragraphs 1 through 221 are realleged and incorporated herein by reference.

223.    Defendants MPLX LP, MarkWest Utica EMG, L.L.C., MarkWest Ohio Fractionation Company, L.L.C., and MarkWest Liberty Midstream & Resources, L.L.C., have violated and or continue to violate NSPS Subpart Db at the 8 large heaters at gas processing plants, (specifically, Cadiz H-1782; Hopedale H-1741, and Hot Oil #4; Houston 3 Hot Oil and Frac Hot Oil-H-781; De-Ethanizer Hot Oil H-1741; Majorsville De-Ethanizer Hot Oil (H-1782); Sherwood De-Ethanizer Hot Oil) at the gas processing plants at 8 Covered Facilities.

224.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, each Defendant is subject to civil penalties of up to $27,500 per day for each violation between January 31, 1997, and March 15, 2004; up to $32,500 per day for each violation between March 16, 2004, and January 12, 2009; up to $37,500 per day for each violation after January 13, 2009 through November 2, 2015; and up to $97,229 per day for each violation after November 2, 2015.

## SIXTH CAUSE OF ACTION

### Violations of NSPS Subparts Dc
### (Cadiz, Utica Condensate, Hopedale, Seneca, Buffalo Creek, Bluestone, Carthage, Majorsville and Sherwood Facilities)

225.    Paragraphs 1 through 224 are realleged and incorporated herein by reference.

226.    Defendants MPLX LP, MarkWest Utica EMG, L.L.C., Ohio Condensate Company, L.L.C., MarkWest Ohio Fractionation Company, L.L.C., MarkWest Buffalo Creek

Gas Company, L.L.C., MarkWest Liberty Bluestone, L.L.C., MarkWest Energy East Texas Gas Company, L.L.C., MarkWest Liberty Midstream & Resources, L.L.C.,  have violated and/or continue to violate NSPS Subpart Dc at 28 heaters (Heaters Cadiz B002, B008, and B013; Cadiz Condensate B001 and B002; Hopedale B001 and B002; Seneca B004, B005, B006, B009, and B011; Buffalo Creek H-1; Bluestone Source 107-4, Source 107-5, Source 107-8, Source 107-12, and Source 107-13; Carthage H8; Mobley H-1781, H-2781, H-4781, and H-5781; Majorsville H-781, H-3781, H-4781, H-4782, and H6782; and Sherwood H771) at the gas plants at 10 Covered Facilities.

227.    For the violations asserted in this Claim, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and the Civil Penalties Inflation Act of 1990, each Defendant is subject to civil penalties of up to $27,500 per day for each violation between January 31, 1997, and March 15, 2004; up to $32,500 per day for each violation between March 16, 2004, and January 12, 2009; up to $37,500 per day for each violation after January 13, 2009 through November 2, 2015; and up to $97,229 per day for each violation after November 2, 2015.

## SEVENTH CAUSE OF ACTION

### Pennsylvania Department of Environmental Protection

228.    Paragraphs 1 through 227 are realleged and incorporated herein by reference.

229.    State Co-Plaintiff PADEP alleges on information and belief that MPLX LP and MarkWest Liberty Midstream & Resources L.L.C. violated and/or continue to violate NSPS Subparts A, VV, VVa, KKK, NNN, and OOOO at their Houston Facility.

230.    State Co-Plaintiff PADEP alleges on information and belief that MPLX LP and MarkWest Liberty Bluestone L.L.C. violated and/or continue to violate NSPS Subparts A, Kb, VVa, NNN, and OOOO at their Bluestone Facility.

49

231.    The Federal NSPS promulgated under 40 C.F.R. Part 60 have been adopted in their entirety by PADEP as requirements of Pennsylvania law and incorporated by reference under 25 Pa. Code Chapter 122 (National Standards of Performance for New Stationary Sources).

232.    For the violations asserted in this Claim, pursuant to 35 P.S. § 4008, MPLX LP and MarkWest Liberty Midstream & Resources L.L.C. are subject to a civil penalty to the Commonwealth of Pennsylvania, Department of Environmental Protection, of not more than $25,0000 per day of violation as provided under 35 P.S. § 4009.1.

### EIGHTH CAUSE OF ACTION

#### State of West Virginia

233.    Paragraphs 1 through 232 are realleged and incorporated herein by reference.

234.    State Co-Plaintiff West Virginia alleges on information and belief that MPLX LP and MarkWest Liberty Midstream & Resources L.L.C. violated and/or continue to violate Subparts A, VV, VVa, KKK, and OOOO at their Majorsville Facility and Subparts A, VVa, and OOOO at their Mobley and Sherwood Facilities.

235.    State Co-Plaintiff West Virginia alleges on information and belief that MPLX LP and MarkWest Hydrocarbon L.L.C. violated and/or continue to violate NSPS Subparts A, VV, VVa, KKK, and OOOO at their Cobb and Kenova Facilities.

236.    State Co-Plaintiff West Virginia alleges on information and belief that MPLX LP and MarkWest Liberty Midstream & Resources L.L.C.'s violations of NSPS Subparts A, VV, VVa, KKK, and OOOO at their Cobb and Kenova Facilities violated or continue to violate the West Virginia Air Pollution Control Act, W.Va. Code § 22-5-1, et seq. and the legislative rules promulgated pursuant to that Act at West Virginia Code of State Rules § 45-16-1 et seq.

237.     For the violations asserted in this Claim, pursuant to W. Va. Code § 22-5-6, MPLX LP, MarkWest Liberty Midstream & Resources L.L.C., and MarkWest Hydrocarbon L.L.C. each are subject to a civil penalty to the State of West Virginia of not more than $10,000 per day of violation.

## NINTH CAUSE OF ACTION

### State of Oklahoma

238.     Paragraphs 1 through 237 are realleged and incorporated herein by reference.

239.     State Co-Plaintiff Oklahoma alleges on information and belief that MPLX LP and MarkWest Oklahoma Gas Company L.L.C. violated and/or continue to violate NSPS Subparts A, VV, VVa, KKK, and OOOO at the Arapaho Facility.

240.     State Co-Plaintiff Oklahoma alleges on information and belief that MPLX LP and MarkWest Buffalo Creek Gas Company, L.L.C. violated and/or continue to violate NSPS Subparts A, VVa, and OOOO at the Buffalo Creek Facility.

241.     State Co-Plaintiff Oklahoma alleges on information and belief that MPLX LP and MarkWest Liberty Midstream & Resources L.L.C.'s violations of NSPS Subparts A, VVa, and OOOO at the Buffalo Creek Facility violated or continue to violate the Oklahoma Clean Air Act, 27A OKLA. STAT. §§ 2-5-101 to -118, the legislative rules promulgated thereunder at Oklahoma Administrative Code 252:100-1-1, et seq., and Oklahoma Department of Environmental Quality Air Quality permits issued pursuant to statutes and legislative rules.

242.     Pursuant to 27A OKLA. STAT. §§ 2-3-202, 2-5-105, and 2-5-117, the Oklahoma Department of Environmental Quality is authorized to enforce the requirements set forth in the Oklahoma statutes and the Oklahoma Administrative Code, and any Oklahoma Department of Environmental Quality Air Quality permits issued thereunder, by instituting an action for

injunctive relieve and/or civil penalties.  For the violations asserted in this Claim, MPLX LP,

MarkWest Oklahoma Gas Company L.L.C. and MarkWest Buffalo Creek Gas Company, L.L.C.

are subject to a civil penalty to the State of Oklahoma of $10,000 for each violation.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations contained in Paragraphs 1 through 242,

above, the United States of America, the State of Oklahoma, the Pennsylvania Department of

Environmental Protection, and the State of West Virginia, request that this Court:

1.     Permanently enjoin Defendants from operating their Facilities except in

accordance with the CAA, state law, and any applicable regulatory requirements;

2.     Order Defendants to achieve, maintain, and demonstrate compliance with the

CAA and applicable requirements established thereunder, including provisions of the Title V

permit requirements described above, and applicable state law;

3.     Order Defendants to take other appropriate actions to remedy, mitigate, and

offset the harm to public health and the environment caused by the violations of the CAA and

state law alleged above;

4.      Assess a civil penalty against Defendants of up to $27,500 per day for each

violation of the CAA between January 31, 1997, and March 15, 2004; up to $32,500 per day for

each violation of the CAA between March 16, 2004, and January 12, 2009; up to $37,500 per

day for each violation of the CAA after January 13, 2009 through November 2, 2015; and up to

$97,229 per day for each violation of the CAA that occurred after November 2, 2015;

5.      Assess a civil penalty against Defendants pursuant to the state penalty

authorities referenced above;

6.     Grant such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA


JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


/s/  James D. Freeman
JAMES D. FREEMAN
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice


JUSTIN E. HERDMAN
United States Attorney

GUILLERMO J. ROJAS
Assistant U.S. Attorney
U.S. Attorney's Office
Four Seagate, Third Floor
Toledo, Ohio 43604
(419) 241-0716
Fax: (419) 241-6360

FOR PLAINTIFF STATE OF OKLAHOMA ON
BEHALF OF THE OKLAHOMA DEPARTMENT OF
ENVIRONMENTAL QUALITY:


/s/  Jonathan Truong
JONATHAN TRUONG
Attorney
Oklahoma Department of Environmental Quality
Office of the General Counsel
Air Quality Division
707 N. Robinson, P.O. Box 1677
Oklahoma City, OK 73101

FOR PLAINTIFF COMMONWEALTH OF
PENNSYLVANIA, DEPARTMENT OF
ENVIRONMENTAL PROTECTION:


GEORGE HARTENSTEIN
Deputy Secretary for Waste Air
Radiation and Remediation
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA 17101


ALEXANDRA C. CHIARUTTINI
Chief Counsel
Department of Environmental Protection
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA 17101


/s/  Robert A. Reiley
ROBERT A. REILEY
Assistant Director
Bureau of Regulatory Counsel
Department of Environmental Protection
Office of Chief Counsel
Rachel Carson Building
400 Market Street
Harrisburg, PA 17101

FOR PLAINTIFF STATE OF WEST VIRGINIA:


WILLIAM F. DURHAM
Director, Division of Air Quality
West Virginia Department of
Environmental Protection
601 57th St.
Charleston, WV 25304



/s/   Jason Wandling
JASON WANDLING
General Counsel
West Virginia Department of
Environmental Protection
601 57th St.
Charleston, WV 25304

**Certificate of Service**

I hereby certify that on November 1, 2018, a copy of foregoing Complaint was filed

electronically. Notice of this filing will be sent by operation of the Court's electronic filing

system to all parties indicated on the electronic filing receipt. All other parties will be served by

regular U.S. mail. Parties may access this filing through the Court's system.


/s/ James D. Freeman
JAMES D. FREEMAN
Senior Attorney
Environmental Enforcement Section
United States Department of Justice
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Telephone: (303) 844-1489
Fax: (303) 844-1350
James.Freeman2@usdoj.gov